**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MAURICE WALKER and WALTER BERGSTROM, | |
| Plaintiffs, | |
| v. | |
| ADVOCATE CHRIST MEDICAL CENTER, RICHARD KUCHYT, DAN LEMPA, RAY SOMOSKA, and KATHY STAHL, | |
| Defendants. | JURY TRIAL DEMANDED |

**<u>COMPLAINT</u>**

NOW COME Plaintiffs, MAURICE WALKER and WALTER BERGSTROM, by and through their attorneys, Smith, Johnson & Antholt, LLC, and complaining of Defendants, ADVOCATE CHRIST MEDICAL CENTER ("ACMC"), RICHARD KUCHYT, DAN LEMPA, RAY SOMOSKA and KATHY STAHL as follows:

**Introduction**

1.      Plaintiff Maurice Walker brings this action pursuant to 28 U.S.C. § 1981 to redress severe and pervasive racial harassment and discrimination that Plaintiff Walker has been subjected to throughout the duration of his employment with Defendant Advocate Christ Medical Center ("ACMC"). Plaintiff Walker also brings a supplemental claim for invasion of privacy.

2.      Plaintiff Walter Bergstom brings this action pursuant to 28 U.S.C. § 1981 to redress his wrongful termination after engaging in the protected conduct of reporting the existence of an ongoing racially hostile environment to his superiors and pursuant to 740 ILCS 174/15, the Illinois Whistleblower Protection Act, and for retaliatory discharge to redress his wrongful termination after he reported to the Chicago Ridge Police Department that a supervisor

at ACMC was committing felonies by running illegal background checks on African American employees.

## Jurisdiction and Venue

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district.

## Parties

4.     Plaintiff Maurice Walker is a forty-six-year-old African American resident of Cook County, Illinois. He has worked as a security guard in the Public Safety Department of ACMC since March of 2008.

5.     Plaintiff Walter Bergstrom is a fifty-four-year-old resident of Will County, Illinois. From February of 2012 until his termination in May of 2013, Plaintiff Bergstrom was employed as a sergeant in the Public Safety Department of ACMC.

6.     Defendant Advocate Christ Medical Center is a not-for-profit teaching, research, and referral hospital located at 4440 W. 95th Street, Oak Lawn, Illinois. Defendant ACMC is incorporated under the laws of Illinois.

7.     Defendant Richard Kuchyt, upon information and belief, resides in or near Cook County, Illinois. At all times relevant to this complaint, Defendant Kuchyt has been employed as a lieutenant in the Public Safety Department of ACMC and has been in a supervisory position over Plaintiff Walker and Plaintiff Bergstrom. Defendant Kuchyt's job responsibilities include the daily assignment of security posts, the disciplining of security guards, and the general

management of the security guard teams. Defendant Kuchyt is still employed in this capacity today.

8.      Defendant Dan Lempa, upon information and belief, resides in or near Cook County, Illinois. At all times relevant to this complaint, Defendant Lempa has been employed as the Deputy Chief in the Public Safety Department of ACMC and has been in a supervisory position over Plaintiff Walker, Plaintiff Bergstrom, and Defendant Kuchyt. Defendant Lempa's job responsibilities include managing the Emergency Response Team ("ERT") of the Public Safety Department. Defendant Lempa is still employed in this capacity today.

9.      Defendant Ray Somoska, upon information and belief, resides in or near Cook County, Illinois. At all times relevant to this complaint, Defendant Somoska has been employed as the Managing Chief in the Public Safety Department of ACMC and has been in a supervisory position over Plaintiff Walker, Plaintiff Bergstrom, Defendant Kuchyt and Defendant Lempa. Defendant Somoska is still employed in this capacity today.

10.      Defendant Kathy Stalh, upon information and belief, resides in or near Cook County, Illinois. At all times relevant to this complaint, Defendant Stahl has been employed as the Director of the Public Safety Department of ACMC and has been in a supervisory position over Plaintiff Walker, Plaintiff Bergstrom, Defendant Kuchyt, Defendant Lempa, and Defendant Somoska. Defendant Stahl is still employed in this capacity today.

**Background Facts**

11.      Defendant Stahl and Somoska retain the ultimate authority on hiring and firing. Their decisions in this capacity are based upon the recommendations of the Public Safety Department's hiring committee, of which Defendants Kuchyt and Lempa are members.

12.     Throughout Plaintiffs' employment within the Public Safety Department of ACMC, Defendants Kuchyt, Lempa, Somoska, and Stahl (collectively, "Defendant Supervisors") have worked in concert to create a racially hostile environment whereby all employees are terrified to speak out about the injustices that they encounter on a daily basis. Defendant Supervisors have done this by ruthlessly attacking any employee who makes a complaint about the overt racial hostility and discrimination within the Public Safety Department.

**Facts Relevant to Plaintiff Walker's Hostile Work Environment
and Invasion of Privacy Claims**

13.     Plaintiff Walker is a member of a protected class, African Americans.

14.     Plaintiff Walker has been continuously subjected to a racially hostile environment.

15.     Defendant Kuchyt and other officers that follow his lead constantly refer to Plaintiff Walker as "n**ger", "boy" and other racially derogatory and demeaning terms.

16.     Defendant Kuchyt and members of his team tell Plaintiff Walker that he is their "n**ger boy" and that because of this, they will "take care of him."

17.     In early 2012, Defendant Kuchyt created an ID card with a photograph of the African-American character "Jimmie Walker" from the television show *Good Times* and put Plaintiff Walker's name on it, with the catchphrase "DYN-O-MITE".

18.     Defendant Kuchyt created a second ID card that took Plaintiff Walker's photograph, but added dark lips and dreadlocks.

19.     The ID cards created by Defendant Kuchyt are depicted below:



20.     Defendant Kuchyt ordered Plaintiff Walker to wear both of these identification badges while working.

21.     In addition to these specific actions, Defendant Kuchyt regularly told racially derogatory jokes and treated Plaintiff Walker more harshly than he treated non-African-American employees.

22.     Defendant Kuchyt also abused his powers by running illegal criminal background checks on select African-American ACMC employees.

23.     After illegally obtaining Plaintiff Walker's criminal background check, Defendant Kuchyt showed approximately twenty public safety employees Plaintiff Walker's confidential information.

24.     Defendant Kuchyt and the security guards who viewed Plaintiff Walker's criminal background report subsequently derided Plaintiff Walker based upon what they had seen,

ridiculing him for not having a criminal background and saying that he couldn't be from his own neighborhood, Englewood, a predominately African American neighborhood, because he didn't have a criminal background.

25.     Plaintiff Walker did not give his consent to Defendant Kuchyt to run his criminal background check.

26.     This is felonious activity and a blatant invasion of Mr. Walker's right to privacy.

### Facts Relevant to Plaintiff Walker's Failure to Promote Claim
### Emergency Response Team

27.     Prior to working at Defendant ACMC, Plaintiff Walker was employed as a security guard at Secure Tax where he qualified to carry a weapon by passing a standard shooting test.

28.     In 2011, Defendant ACMC initiated an Emergency Response Team ("ERT") whereby those who qualified for the ERT by passing a standard shooting test could carry a firearm while on duty.

29.     Defendant ACMC made qualification tests available to take once every six months and each security guard was required to pass this test every six months in order to maintain eligibility for the ERT.

30.     Defendant Lempa is the manager of the ERT and has complete control over who is assigned to the ERT.

31.     In addition to other benefits, working for the ERT pays approximately three more dollars per hour than non-ERT qualified security guards receive. That constitutes a raise of over $6,000 per year on average.

32.     After Plaintiff Walker passed the test in 2012, Defendant Lempa added requirements to qualify for the ERT that only applied to Plaintiff Walker.

33.     Plaintiff Walker passed the shooting test multiple times, but Defendant Lempa refused to allow him on the ERT.

34.     Plaintiff Walker then reported to his sergeant, Plaintiff Bergstrom, that he was being unlawfully denied access to the ERT.

35.     When Plaintiff Bergstrom confronted Defendant Lempa, Defendant Lempa responded that he did not want that "black fag" working on the ERT.

36.     Within the past month, three new security guards have been hired by the Public Safety Department. Each of these new hires was automatically granted authorization to work on the ERT despite not being previously qualified and never passing the "mandatory" tests. All three of these newly hired security guards are Caucasian.

37.     In addition to the ERT, working outside patrol is a desired position amongst the security guards at ACMC.

38.     Defendant Kuchyt is responsible for assigning security guards positions for each shift and he rotates the positions daily.

39.     Plaintiff Walker has consistently asked for this position since his employment began with Defendant ACMC.

40.     Despite being sufficiently qualified for the position throughout his employment, Plaintiff Walker has never been given an outside patrol position.

41.     Defendant Kuchyt told Plaintiff Walker that the people at the hospital did not want to see "his kind" patrolling the outside of the hospital.

42.     Defendant Kuchyt has never assigned any African American to outside patrol during the last five years that Plaintiff Walker has been employed with ACMC.

**Facts Relevant to Plaintiff Bergstrom's Wrongful Termination in Retaliation
for Engaging in Protected Conduct Pursuant to 42 U.S.C. § 1981**

43.     In June of 2012, Plaintiff Walker confided in Plaintiff Bergstrom and told him
that he had been subject to a racially hostile work environment for the past five years.

44.     Plaintiff Bergstrom immediately reported this information to his direct supervisor,
Defendant Kuchyt.

45.     After Defendant Kuchyt took no action to rectify the problem, in July of 2012,
Plaintiff Bergstrom notified Defendants Lempa, Somsoka, and Stahl of the racially hostile
environment.

46.     After receiving Plaintiff Bergstrom's complaint detailing the racially hostile
environment, Defendant Stahl called Plaintiff Bergstrom into her office and threatened him that
"nobody is irreplaceable."

47.     Despite Defendant Stahl's threat, Plaintiff Bergstrom continued to report the
existence of severe and pervasive racial harassment within the Public Safety Department to
Defendant Supervisors and made his most recent complaint in April of 2013.

48.     On May 23, 2013, Plaintiff Bergstrom was notified via a telephone call from
Defendant Somoska and a representative from the human resources department at Defendant
ACMC that his position had been eliminated.

49.     Shortly after Plaintiff's termination, the Public Safety Department hired seven
new officers and has plans to hire four more.

**Facts Relevant to Plaintiff Bergstrom's Wrongful Termination Claim**

50.     Plaintiff Bergstrom maintained an exemplary record of employment with
Defendant ACMC. Prior to working at Defendant ACMC, Plaintiff Bergstrom had spent twenty-

two years as a sworn law enforcement officer with the Calumet City Police Department and the College of Lake County.

51.     In April of 2012, Defendant Kuchyt arrived at work with copies of criminal background checks for select African-American employees of the Public Safety Department. Defendant Kuchyt was waiving around the background checks and yelling to Defendant Lempa "Now I got that n**ger!"

52.     Defendant Kuchyt then showed the confidential and illegally obtained criminal background checks to approximately twenty employees of the Public Safety Department.

53.     From his decades in law enforcement, Plaintiff Bergstrom knew that illegally obtaining these background checks amounted to a felony.

54.     Plaintiff Bergstrom advised Defendant Kuchyt of the criminality of his actions, but Defendant Kuchyt continued to illegally run the background checks.

55.     Plaintiff Bergstrom immediately reported Defendant Kuchyt's conduct and Defendant Lempa's (his supervisor) adherence to Defendant Somoska. Defendant Somoska took no action.

56.     Plaintiff Bergstrom continued to complain about the illegal background checks being run by Defendant Kuchyt, but no action was taken and Defendant Kuchyt continued to run the illegal criminal background checks.

57.     In April of 2013, Plaintiff Bergstrom notified the Chicago Ridge Police Department and the Illinois State Police of Defendant Kuchyt's illegal activities. Plaintiff Bergstrom emailed Defendants Lempa, Somoska, and Stahl as well as the ACMC Human Resources Department and told them that he had notified police of Defendant Kuchyt's criminal activities.

58.     Within weeks, Plaintiff Bergstrom was terminated from his employment with Defendant ACMC.

**FIRST CLAIM FOR RELIEF:**
**Hostile Environment in Violation of 42 U.S.C. § 1981**

59.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

60.     Defendant ACMC has maintained, fostered, and tolerated a racially hostile environment and has failed to take prompt and effective remedial action to prevent such harassment from continuing.

61.     The action and inaction of the Defendant as outlined herein has substantially interfered with the ability of the Plaintiff Walker to effectively perform his work and has demeaned and belittled Plaintiff Walker, causing him severe emotional injury.

62.     The above constitutes illegal, intentional discrimination and retaliation prohibited by 42 U.S.C. § 1981 et seq.

63.     The above actions were taken intentionally, willfully and/or with reckless disregard for the rights of Plaintiffs.

**SECOND CLAIM FOR RELIEF:**
**Failure to Promote in Violation of 42 U.S.C. § 1981**

64.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

65.     Plaintiff Walker is a member of a protected class, African-American.

66.     Plaintiff Walker is qualified for and continually requested outside patrol but has never once been assigned outside patrol during the entire five plus years he has worked at Defendant ACMC.

67.     During the time that Plaintiff Walker has been employed by Defendant ACMC, outside patrol has never been granted to an African American; though others who are less qualified than Plaintiff Walker but are not African American have been granted outside patrol.

68.     Plaintiff Walker has been wrongfully denied the opportunity to work for the ERT—despite qualifying for the ERT multiple times, Defendant Lempa denied Plaintiff Walker access.

69.     Defendant Lempa has fabricated barriers to prevent Plaintiff Walker from joining the ERT because Plaintiff Walker is an African American.

70.     The above constitutes illegal, intentional discrimination and retaliation prohibited by 42 U.S.C. § 1981 et seq.

71.     The above actions were taken intentionally, willfully and/or with reckless disregard for the rights of Plaintiffs.

### THIRD CLAIM FOR RELIEF:
### Invasion of Privacy by Intrusion Upon Seclusion

72.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

73.     The running of Plaintiff Walker's criminal background check by Defendant Walker was unauthorized.

74.     Plaintiff Walker's criminal background report consists of private facts that are not newsworthy or valuable to the public in any way and Plaintiff Walker is entitled to an expectation of privacy in his criminal background report.

75.     Defendant Kuchyt's unauthorized and illegal criminal background check on Plaintiff Walker constitutes an intrusion into a private matter that a reasonable person would find highly offensive.

76.     The above-actions have substantially interfered with the ability of Plaintiff Walker to effectively perform his work and have demeaned and belittled Plaintiff Walker, causing him severe emotional injury.

77.     The above actions are in violation of the Illinois common law tort of intrusion upon seclusion.

78.     The above actions were taken intentionally, willfully and/or with reckless disregard for the rights of Plaintiffs.

**FOURTH CLAIM FOR RELIEF:**
**Invasion of Privacy by Public Disclosure of Private Facts**

79.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

80.     Defendant Kuchyt disclosed and publicized Plaintiff Walker's criminal background report to approximately twenty people.

81.     The disclosure and publication of one's criminal background report to one's co-employees is offensive to a person of reasonable sensibilities.

82.     The above-actions have substantially interfered with the ability of Plaintiff Walker to effectively perform his work and have demeaned and belittled Plaintiff Walker, causing him severe emotional injury.

83.     The above actions are in violation of the Illinois common law tort of public disclosure of private facts.

84.     The above actions were taken intentionally, willfully and/or with reckless disregard for the rights of Plaintiffs.

**FIFTH CLAIM FOR RELIEF:**
**Plaintiff Bergstrom's Wrongful Termination in Retaliation for Engaging in**
**Protected Conduct Pursuant to 42 U.S.C. § 1981**

85.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

86.     Complaining to one's supervisors of a racially hostile work environment is a

protected activity.

87.     Plaintiff Bergstrom was terminated because he complained of the racially hostile

work environment to his supervisors.

88.     By the conduct as alleged herein, Defendants violated 42 U.S.C § 1981.

89.     Defendants' conduct toward Plaintiff illustrated an intentional, willful and/or

reckless disregard for his rights under 42 U.S.C § 1981.

**SIXTH CLAIM FOR RELIEF:**
**Retaliatory Discharge in Response to the Reporting of Defendant Kuchyt's**
**Illegal Activity to Defendant ACMC Superiors and to the Chicago Ridge Police**
**Department and the Illinois State Police**

90.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

91.     Defendant Kuchyt was performing illegal criminal background checks.

92.     Plaintiff Bergstrom continually reported these crimes to his superiors at

Defendant ACMC.

93.     Plaintiff Bergstrom subsequently reported these crimes to the Chicago Ridge

Police Department and the Illinois State Police.

94.     In retaliation for making this report, Plaintiff Bergstrom suffered an adverse

employment action when he was terminated on May 23, 2013.

13

95.     Mr. Bergstrom's termination was in direct violation of the Illinois common law retaliatory discharge tort as explained in *Palmateer v. Int'l Harvesting Co.*, 421 N.E. 2d 876, (Ill. 1981).

96.     Defendants' conduct toward Plaintiff Bergstrom illustrated an intentional, willful and/or reckless disregard for his rights under Illinois law.

**SEVENTH CLAIM FOR RELIEF:**
**Wrongful Termination in Violation of the Illinois Whistleblower Act**

97.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

98.     Section 15 of the Illinois Whistleblower Act reads in part: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15.

99.     Plaintiff Bergstrom is an employee as defined by Section five of the Illinois Whistleblower Act. ACMC is an employer as defined by Section Five of the Illinois Whistleblower Act.

100.     By the conduct as alleged herein, Defendants violated Section 15 of the Illinois Whistleblower Act when they terminated Plaintiff Bergstrom in retaliation for reporting Defendant Kuchyt's illegal activity to state and city officials.

101.     Defendants' conduct toward Plaintiff illustrated an intentional willful and/or reckless disregard for his rights under Illinois law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in his favor and against Defendants on Count I through VII and that it:

A.      Declare Defendants' actions constitute: a hostile environment in violation of 42 U.S.C. § 1981; a failure to promote pursuant to 42 U.S.C. § 1981; a tortuous invasion of privacy by intrusion upon seclusion; a tortuous invasion of privacy by public disclosure of private facts; unlawful retaliatory discharge in violation of 42 U.S.C. § 1981; unlawful retaliatory discharge in violation of Illinois common law; unlawful retaliatory discharge in violation of Illinois Whistleblower Act.

B.      Award Plaintiffs the value of all lost compensation and benefits as a result of Defendants' unlawful conduct;

C.      Order Defendant to reinstate Plaintiff Bergstrom to a position equal to or greater than his former position; or, in the alternative, award Plaintiff Bergstrom the value of compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

D.      Award Plaintiffs any applicable compensatory and punitive damages;

E.      Award Plaintiffs any applicable reasonable attorney's fees, costs and disbursements;

F.      Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

G.      Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation;

H.      Award Plaintiffs any and all other relief as this Court sees fit.

15

JURY TRIAL DEMANDED

RESPECTFULLY SUBMITTED,


_____/s/ *Christopher R. Smith*_____
One of the Attorneys for Plaintiffs
Maurice Walker and
Walter Bergstrom

Christopher R. Smith
Robert W. Johnson
Amanda C. Antholt
James M. Baranyk
Emily J. Stine
Smith, Johnson & Antholt, LLC
One North LaSalle, Suite 3040
Chicago, IL 60602
312.432.0400